**CESSNA FINANCE CORPORATION, Respondent,**

v.

**James A. DWIRE, Appellant.**

**No. C2–85–1301.**

Court of Appeals of Minnesota.

Nov. 19, 1985.

---

Timothy R. Schupp, Faegre & Benson, Minneapolis, for respondent.

Steven Z. Kaplan, Hart & Bruner, P.A., Minneapolis, for appellant.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

This is an appeal by James Dwire, guarantor, from a grant of summary judgment in favor of Cessna Finance Corp., holder of a personal guaranty contract. We affirm.

### FACTS

Respondent Cessna Finance Corp. is a Kansas corporation that accepts assignments of retail conditional sales contracts from the Cessna aircraft dealer organization. American Energy Farming Systems, Inc. (AEFS) was a Minnesota corporation formed in 1981 for the purpose of developing and promoting the sale of Jerusalem artichokes. Its two shareholders were appellant James Dwire, president, and Fred Hendrickson, secretary. They were equal owners of the corporation. Dwire had previously owned his own construction company.

In December 1982 AEFS arranged to purchase a Cessna TR182 aircraft from Star Aviation, a Cessna dealer in Spearfish, South Dakota. AEFS submitted financial data to secure a loan from Cessna Finance. Cessna approved the loan on the condition that Dwire sign a personal guaranty.

On January 7, 1983, Dwire and Hendrickson executed the conditional sales contract for AEFS. Under the contract, Star Aviation retained a security interest in the plane, which was assigned to Cessna Fi-

nance. Both Dwire and Hendrickson signed personal guaranty agreements on forms supplied by Cessna Finance. The agreement guaranteed to Cessna payment on demand of the entire unpaid balance due if AEFS defaulted. The agreement further provided:

> Guarantor consents to and agrees that liability hereunder shall not be affected by * * * any error or omission in filing of the [security instrument], or renewals thereof, or by the termination for any cause whatsoever of any right of Creditor against the debtor under such [security instrument] * * *.

> Guarantor agrees that * * * Creditor shall not be required to first proceed against or exhaust any remedies against any party other than the Guarantor or exhaust any Note and/or Instrument * * *.

Dwire and Hendrickson signed the guaranty forms as "president" and "secretary" respectively. Because the designation of office suggested corporate rather than personal liability, Cessna sent a new form to Dwire for his personal signature. There is no evidence of an additional form being sent to or received by Hendrickson. When Dwire returned the guaranty agreement on March 4, 1983, Cessna completed the loan transaction and filed the conditional sales contract with the Federal Aviation Administration, thereby meeting the filing requirements of 49 U.S.C. § 1403 *et seq.* and Minn.Stat. § 336.9–302(3)(a) (1984).

On May 23, 1983, AEFS filed for relief under Chapter 11 of the Bankruptcy Code. Thereafter, AEFS defaulted on the payments due to Cessna Finance. The bankruptcy court determined that Cessna's security interest was a preference[1] and therefore the bankruptcy trustee had a superior claim to the plane.

Cessna requested payment from Dwire on the personal guaranty. When no pay-

ment was made, Cessna brought suit to recover the unpaid balance. On January 7, 1985, Cessna filed a motion for summary judgment that was supported by the affidavit of David C. Peaden, administrative manager and assistant secretary for Cessna Finance.

Dwire opposed the motion, relying on testimony contained in his deposition and his answers to Cessna's interrogatories. Dwire's contention was that he "assumed" Cessna would have a valid security interest and would also have required Hendrickson to sign a personal guaranty, so that Dwire could seek contribution from him. For instance, in answer to interrogatory # 2, Dwire stated:

> At the time the defendant executed the purported personal guarantee he assumed that the plaintiff would perfect a valid security interest and thereby fully protect itself against the claims of other parties because the failure by the plaintiff to do so would expose the defendant to a greater financial risk than that for which he was then prepared to assume.

Additionally, Dwire contended that he was entitled to a set-off for the value of the security and that the guaranty agreement was unconscionable.

The trial court granted Cessna's motion and awarded approximately $95,000 in principal and interest. Dwire appeals.

## ISSUES

1. Did the trial court err in granting summary judgment in favor of Cessna Finance?

2. Did the trial court err in finding the guaranty agreement is not unconscionable?

## ANALYSIS

### I

Summary judgment is proper when no genuine issue of material fact exists and

---

**1.** Cessna's security interest was a preference because the sales contract was filed within 90 days of AEFS's bankruptcy petition and the security interest was perfected more than 10 days after the dealer's security interest in the plane at-

tached. *See* 11 U.S.C. § 547(b)(4)(A); § 547(c)(3). The finding of a preference allows the bankruptcy court to avoid the security interest.

either party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. A material fact issue is one which will affect the result or outcome of the case. *See Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 229, 219 N.W.2d 641, 646 (1974). When a motion for summary judgment is made and supported, an adverse party must present specific facts showing that there is a genuine issue for trial. Minn.R.Civ.P. 56.05; *In re Estate of Tourville*, 366 N.W.2d 380 (Minn.Ct.App.1985).

The following facts are not disputed: Cessna extended credit to AEFS on the condition that Dwire execute a personal guaranty; Dwire signed the guaranty, which was absolute; and AEFS defaulted. Dwire does not dispute that he signed the personal guaranty or that AEFS defaulted.

■ Dwire raises as a defense to the guaranty his "assumption" that Cessna Finance would obtain both a valid security interest and Hendrickson's personal guaranty. He maintains that the trial court incorrectly applied the parol evidence rule in its summary judgment order. Whether the parol evidence rule is applicable or inapplicable does not vary the result. Taking all of Dwire's contentions as admissible, they have no merit and fail to raise a material factual issue that would prevent summary judgment for Cessna.

First, Cessna perfected its security interest by filing the conditional sales contract with the FAA. A short time later Dwire's corporation filed for bankruptcy. The bankruptcy court avoided the security interest because it was perfected within 90 days of AEFS's bankruptcy petition, not because Cessna "failed to timely perfect it," as Dwire alleges. Even if the delay in filing constitutes an error or omission on Cessna's part, the guaranty contract specifically provides that "liability hereunder shall not be affected by * * * any error or omission in filing of the [security instrument]." Furthermore, even if Cessna had an enforceable security interest, under the terms of the agreement Cessna would have no obligation to proceed against the securi-ty before proceeding against Dwire on the guaranty. *See Central State Bank v. Hanson*, 158 Minn. 269, 270, 197 N.W. 283, 284 (1924); *Bank of Sun Prairie v. Opstein*, 86 Wis.2d 669, 273 N.W.2d 279 (1979).

■ Second, Dwire's "assumptions" about what Cessna would or would not do with regard to obtaining Hendrickson's personal guaranty do not rise to the level of material facts. He has demonstrated absolutely no evidence of statements, conduct, or representations made by Cessna that would reasonably lead him to rely on those assumptions. He does not dispute that Cessna's agreement to finance the plane was contingent on his personal guaranty alone. It is not clear from the record why Hendrickson signed a guaranty as secretary of the corporation, but it appears that Hendrickson's guaranty still exists, and its validity, for purposes of obtaining contribution, has not yet been determined. Dwire's proffered evidence, as the trial court concluded, consists merely of nonfactual, self-serving statements.

In *Midway National Bank v. Gustafson*, 282 Minn. 73, 165 N.W.2d 218 (1968), the court said:

"When two competent parties who can readily read and write, sign a guaranty agreement and the plaintiff on the basis of the guaranty extends credit to the other defendant, there is nothing left for a Court to do but to find a judgment against such guarantors. * * * People who sign documents which are plainly written must expect to be held liable thereon. Otherwise written documents would be entirely worthless and chaos would prevail in our business relations."

*Id.* at 78, 165 N.W.2d at 222 (quoting *Watkins Products, Inc. v. Butterfield*, 274 Minn. 378, 380, 144 N.W.2d 56, 58 (1966)). The trial court correctly granted summary judgment to Cessna Finance because Cessna was entitled to prevail as a matter of law.

■ Dwire argues that if he is liable on the guaranty, then he is entitled to a set-off for the fair market value of the plane because Cessna's actions in "failing to timely file" resulted in the release or diversion of its security. Cessna did not fail to file, nor did it release the security. The bankruptcy court avoided Cessna's perfected security interest by finding it to be a preference. A set-off is not appropriate where proceedings in bankruptcy are the cause of loss of security. *See American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975).

## II

■ Dwire contends that the guaranty agreement is "inherently unconscionable and contrary to the common law of contract." He does not, however, point to anything in the language of the agreement which renders it unconscionable.

The trial court found the contract was not unconscionable, citing *Midway National Bank v. Gustafson.* The guarantors in *Midway* had signed guaranty agreements which "were about as inclusive of every kind of indebtedness of [the debtor] as they could be." 282 Minn. at 78, 165 N.W.2d at 222. Even though the court noted that the guarantors had bargained away "practically every right which they now advance as a defense," *id.,* the guaranty contract was upheld. The contract at issue in the present case is no broader in scope than the one in *Midway.* In addition, both parties here were experienced in business affairs. Therefore, we uphold the trial court's finding that the contract was not unconscionable.

## DECISION

The trial court correctly granted summary judgment in favor of Cessna Finance Corporation because Dwire failed to raise any genuine issues of material fact. Dwire is not entitled to a set-off for the fair market value of the aircraft.

Affirmed.