**Willis R. BRUSS, Appellant,**

v.

**The TORO COMPANY, Respondent.**

No. C1–88–414.

Court of Appeals of Minnesota.

Aug. 2, 1988.

Robert Seidl and Robert J. Brenner, Minneapolis, for appellant.

Lisa M. Hurwitz and Mary Beth Pawlenty, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and SCHUMACHER and MULALLY,* JJ.

## OPINION

SCHUMACHER, Judge.

Willis R. Bruss appeals from a summary judgment dismissal of his age discrimination claim. He alleges that his former employer, the Toro Company, terminated him and filled his position with a younger man under the pretext of seeking a more educated individual, despite the fact that Bruss had performed his job in a fully satisfactory manner for several years. He seeks remand for a trial on the merits. We reverse and remand.

## FACTS

Appellant, Willis R. Bruss, was employed by Toro Company for approximately 33 years. From 1948 through 1976, he worked as a union laborer. In 1976, he was offered a promotion to an administrative job in the personnel department. He alleges that Toro president, Dave McLaughlin, assured him the new position would give him more security than he had before.

Although he possessed no formal title, Bruss was generally regarded as the personnel manager. For two months, Bruss trained under the previous "personnel manager" who had held the position for approximately 25 years. After the training period, Bruss assumed all the duties of personnel manager, performed them in what his superiors regarded as a fully satisfactory manner, and was regularly recommended for merit pay increases.

In 1979 or 1980, Toro began experiencing a decrease in revenues. Also in 1979, the company created two separate personnel positions: personnel manager and personnel supervisor. The personnel manager position required a B.A. degree or the equivalent thereof. Bruss did not possess a college degree and when he inquired as to what would constitute the equivalent of a B.A. degree, he was told by a Mr. Kliner, one of his superiors, that a B.A. was required. Toro maintains that Bruss neither inquired as to what Toro would accept as the equivalent of a degree, nor applied for the position. Bruss acknowledges that he did not apply for the position, believing that he would not even be considered, since he did not possess a degree and since it was impossible to acquire one in the time frame established for filling the position.

Bruss became the personnel supervisor, and a personnel manager with a B.A. was hired. Bruss maintains that he and the new manager performed the same duties and that between them, they performed the same duties and responsibilities previously performed by Bruss alone.

The new manager remained in the position for a little over a year. From October 1980 until March 1981, Bruss again assumed the job of personnel manager and supervisor, although his title did not change. In March 1981, Toro hired a 27-year-old college graduate. Bruss trained

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

in the new employee and was terminated two months later.

On or near the day on which he was terminated, Bruss was offered another job within the company as plant security supervisor. The job involved a $200/month cut in pay, lower status, and working the undesirable "second shift." According to Bruss, when his superiors refused to provide him with a job description for the new position, and for all the reasons cited above, he refused the offer. One week later, he tried to accept the position, but the company did not rehire him and the job remained unfilled, at least through June of 1986.

At the time of Bruss' termination, only one of the twelve other Toro plants had a comparable subordinate personnel position, which was also eliminated. Approximately 200 positions were eliminated during Toro's financial difficulties.

Bruss filed a discrimination complaint with the Minnesota Department of Human Rights in 1981. In 1985, the department made a finding of no probable cause. The commissioner upheld that decision on appeal. Bruss subsequently filed this lawsuit alleging discrimination, breach of contract, estoppel, and breach of an implied covenant of good faith and fair dealing. The trial court dismissed the case on the summary judgment motion. From the dismissal of his discrimination claim, Bruss now appeals.

### ISSUE

Did the trial court err in granting a summary judgment dismissal of appellant's age discrimination claim?

### ANALYSIS

Summary judgment will be affirmed on appeal, if there is no genuine issue of material fact and the trial court correctly applied the relevant law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979); Minn.R.Civ.P. 56.03.

The plaintiff alleging disparate treatment has the burden of establishing a prima facie case. *Hubbard v. United Press*

*International, Inc.*, 330 N.W.2d 428, 442 (Minn.1983). Plaintiff must establish:

1. membership within the protected class;
2. qualification for the job from which plaintiff was terminated;
3. termination;
4. assignment of a non-class member to perform the same work.

*Schlemmer v. Farmers Union Central Exchange, Inc.*, 397 N.W.2d 903, 907 (Minn. Ct.App.1986). Should the plaintiff establish the aforementioned criteria, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the challenged activity. *Hubbard*, 330 N.W.2d at 441–42 n. 12 *citing Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Finally, the plaintiff must prove that the defendant's proffered explanation is merely a pretext for discrimination. *Id.*

We find that sufficient factual issues exist in the record on each of the four prima facie requirements.

First, under Minn.Stat. Ch. 363 all employees over the age of majority are protected from age discrimination in employment. Minn.Stat. § 363.01, subd. 28 (1980) and § 363.03, subd. 1 (1980). Section 363.-02, subd. 6 contains a cross-reference to Minn.Stat. § 181.81. This statute cross-references Minn.Stat. § 181.81, subd. 1, which protects all employees under the age of 70—subject to certain exceptions not relevant here. The record is unclear, but Bruss was 52 or 53 years of age at the time of his discharge. He is, therefore, a member of a protected class under either statute.

Second, Bruss alleges that he performed all tasks related to the personnel positions in a fully satisfactory manner. From 1976–1979, and from 1980–1981 he was the sole employee in the personnel department and he performed all tasks and responsibilities that would eventually be performed by the personnel manager and the personnel supervisor. In 1979–1980 and for the two months prior to his termination, he performed the same tasks but shared the work

load with another man. Toro admits the personnel position was a one-person job being performed by two people. It is a question of fact as to whether Bruss is "qualified" for the job when he has performed it for years in a satisfactory manner but lacks an academic degree. In *Hendrickson v. Magney Construction Co.*, 402 N.W.2d 194, 197 (Minn.Ct.App.1987), we found that appellant had failed to show he was qualified for a job where he was unable to perform the *tasks* required by the job. Here Bruss did in fact perform the job tasks and did so to the satisfaction of his employers, earning recommendations for regular merit pay increases. He performed the job satisfactorily without a degree, as had his predecessor for 25 years.

Third, Bruss maintains he was terminated; Toro claims his position was eliminated. Here, Bruss was, in fact, performing the duties of personnel manager and supervisor. Despite the fact Bruss was doing a good job and that the company was scaling back its operations, Toro hired a much younger man and split the workload between Bruss and the new employee. After Bruss had spent two months training the new employee, Bruss' position was eliminated and he was terminated. These circumstances create a question of fact as to whether the elimination of Bruss' position was merely a pretext for replacing him with a younger man.

Fourth, a man more than 20 years younger than Bruss was hired to perform the same work as Bruss had been doing. Here the tasks performed by the new manager were identical to those performed by Bruss, and it is the work performed, not the job title, that is crucial to the analysis.

Bruss established a prima facie case of age discrimination and should, therefore, have been allowed to proceed to trial.

## DECISION
Reversed and remanded.