**Elaine G. ALBERTSON, Appellant,**

v.

**FMC CORPORATION, Respondent.**

**No. C2-88-1832.**

Court of Appeals of Minnesota.

March 21, 1989.

Randall J. Fuller, Robert F. Manella, Babcock, Locher, Neilson & Manella, Anoka, for appellant.

Dale E. Beihoffer, Arthur H. Abel, Faegre & Benson, Minneapolis, for respondent.

Heard, considered and decided by NORTON, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NORTON, Judge.

Elaine Albertson appeals from summary judgment in favor of respondent FMC Corporation (FMC) on her claim of age discrimination. Albertson alleges that FMC terminated her employment under the pretext of poor performance on a skills rating which was conducted as part of a reduction in force. We affirm.

## FACTS

Appellant was originally hired by FMC's Northern Ordnance Division (NOD) as a stenographer, and later worked in different positions, including customer service assistant, clerk, and secretary. In 1986, appellant was employed as a Secretary Grade 5 in the Product Support Business Group, part of the Program/Business Management Group, which was part of the Program/Business Development Department. According to her annual reviews for 1983–85, appellant's job performance as a secretary was satisfactory.

In March 1986, NOD management decided to reduce the salaried workforce. NOD offered all salaried employees a voluntary early retirement plan with severance pay. Ninety employees voluntarily ended their employment. FMC then initiated a reduction in force (RIF) plan for involuntary terminations. Under the plan, department managers established skill categories for each salaried position. A management committee reviewed each salaried employee and determined a numerical score for each skill category. Each skill category was then weighted according to the relative importance of that skill, and the weighted scores were added together to determine the employee's total score. The employees with the lowest scores were chosen for termination of employment.

The NOD RIF plan was approved by NOD's Human Resources Department and the director of salaried personnel before implementation. According to NOD executives, the RIF was designed to provide a system with built-in checks to assure that decisions to terminate employment were based on appropriate business considerations, and not on unlawful factors such as age. One of the "checks" in the system consisted of a review of the proposed RIF by an oversight committee established to enforce guidelines and procedures.

Under the RIF plan, NOD decided to eliminate five of the 13 secretarial positions in the Program/Business Development Department. The Program/Business Management Group within the department employed eight secretaries, including appellant.

In March or April of 1986, a committee of department managers met and performed a skills assessment of the secretaries in the department. The rated skills were:

General office skills
Interpersonal relationships
Time management
Knowledge about NOD
Knowledge about customers

Communications ability

Judgment

Confidentiality

Organizational skills

Appellant was ranked lowest of the eight secretaries in the group. She was one of the five lowest-ranked secretaries in the department.

On May 23, 1986, appellant and 54 other NOD employees were told that their positions would be terminated. Appellant was then 59 years old.

According to group manager Roger Gilmore, some of appellant's work is now performed by a clerk who was hired after the RIF. The clerk is in her mid-thirties.

After the termination announcement, NOD provided workshops, employment counseling, resume typing services, and postage for terminated employees. NOD also posted internal job openings throughout the company. Of the 55 employees whose employment was involuntarily terminated in the RIF, 32 were over age 40. Thirteen of the 55 were subsequently rehired in other positions by NOD. Two of these employees were secretaries from appellant's department (Perpich, age 31, Torgerson, age 48). Nine of the thirteen rehires were over 40 years old. The number of employees whose employment was terminated as a result of the RIF and were not rehired was 42. Twenty-three of those 42 employees were over 40 years old.

Appellant brought suit in Hennepin County alleging that FMC terminated her employment based on age, in violation of the Minnesota Human Rights Act, Minn. Stat. § 363.03, subd. 1(2)(b) (1986). The parties stipulated to dismiss appellant's claims for attorney fees and punitive damages. FMC then moved for summary judgment on the issue of discrimination. The trial court determined that appellant established a prima facie case of age discrimination, but that respondent FMC met its burden of presenting sufficient evidence to establish a legitimate business reason for its actions. The court further determined that appellant failed to demonstrate facts which, if believed, would allow a trier of fact to infer that FMC's stated purpose for

the RIF was a pretext for discrimination based on age. Consequently, the court concluded that respondent was entitled to summary judgment, and dismissed appellant's cause of action with prejudice.

## ISSUE

Did the trial court err in granting respondent's motion for summary judgment?

## DECISION

Summary judgment will be affirmed on appeal if there is no genuine issue of material fact and the trial court did not err in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979); Minn.R.Civ.P. 56.03. Summary judgment is proper when the nonmoving party fails to provide the court with specific facts indicating that there is a genuine issue of fact. *Erickson v. General United Life Insurance Co.,* 256 N.W.2d 255, 258–59 (Minn.1977).

The Minnesota Human Rights Act provides that it is an unfair employment practice for an employer to discharge an employee because of age. Minn.Stat. § 363.03, subd. 1(2)(b) (1986). Discrimination cases brought under this Act must be analyzed under the three-part test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–22 (Minn.1986).

■ The *McDonnell Douglas* analysis first requires an employee to demonstrate a prima facie case of discrimination by a preponderance of the evidence. Second, if the employee establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment decision. Third, if the employer meets its burden, the employee must prove by a preponderance of the evidence that the legitimate reason offered by the employer was a mere pretext for intentional discrimination. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25.

■ The shifting burden of production enunciated in *McDonnell Douglas* also applies to a motion for summary judgment in an age discrimination case. *McDaniel v. Mead Corp.*, 622 F.Supp. 351, 360 (W.D.Va. 1985), *aff'd*, 818 F.2d 861 (4th Cir.1987). Summary judgment is appropriate if the employee fails to present a prima facie case. *Matson v. Cargill, Inc.*, 618 F.Supp. 278, 281 (D.Minn.1985). Summary judgment is also appropriate if the employee establishes a prima facie case, but fails to provide evidence which could establish that the employer's proffered nondiscriminatory reasons for its employment decision were pretextual. *Shea v. Hanna Mining Co.*, 397 N.W.2d 362, 369 (Minn.Ct.App.1986) (citing *Parker v. Federal National Mortgage Association*, 741 F.2d 975, 979–80 (7th Cir.1984)).

In order to establish a prima facie case, the employee must demonstrate:

(1) that the employee was a member of the protected class,

(2) that the employee was qualified for the position held,

(3) that the employee was discharged, and

(4) that the employer assigned a nonmember of the protected class to do the same work.

*Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 442 (Minn.1983).

The trial court determined that Albertson has established a prima facie case of discrimination. We agree. Albertson was 59 years old at the time of her termination, and was within the protected class. Respondent does not dispute that Albertson was qualified for her job. Albertson was discharged, resulting in assignment of some of her work to nonmembers of the protected class.

■ The second prong of *McDonnell Douglas* has been met by FMC articulating a legitimate nondiscriminatory reason for discharging Albertson as part of a RIF to reduce costs. Albertson's termination was based on elimination of her secretarial position and her low skills rating. *See Oxman v. WLS–TV*, 846 F.2d 448, 455–56 (7th Cir. 1988).

■ We must next determine if Albertson has presented specific facts to demonstrate a genuine issue as to whether FMC's proffered reasons were a pretext for discrimination. *See Rademacher v. FMC Corp.*, 431 N.W.2d 879 (Minn.Ct.App.1988). We do not believe that Albertson has presented sufficiently different facts from *Rademacher* to render summary judgment inappropriate. Both Rademacher and Albertson were secretaries in the same group, terminated under the same RIF procedures. Albertson claims that the skills ratings were subjective and biased in favor of younger workers. We agree with the trial court that there is nothing in the record to suggest that Albertson was ranked lowest because of her age. Albertson's assessment of the skills ratings process is unsupported by the evidence. *See id.* at 883.

■ Albertson also claims that although FMC eliminated her position, it essentially replaced her with a younger woman in a newly created clerk position. The clerk performs some, but not all, of Albertson's former work. Albertson contends this raises a genuine issue of material fact as to the motivation of the RIF and her discharge. We do not agree.

In the usual case, absent discriminatory intent, discharged employees will more often than not be replaced by younger ones. *Laugesen v. Anaconda Co.*, 510 F.2d 307, 313, n. 4 (6th Cir.1975). An employer is not required to restructure its hiring and firing practices to maximize the number of protected employees. *See Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978). We do not believe that the subsequent hiring of one younger employee demonstrates pretext in the context of a plant-wide RIF.

■ Albertson next argues that she has presented statistics on the impact of the RIF which raise a genuine, material fact issue as to age discrimination. It is incumbent on the party basing an argument on statistical data to demonstrate that the proffered conclusions are statistically sig-

nificant. *Equal Employment Opportunity Commission v. Western Electric Co., Inc.*, 713 F.2d 1011, 1016 (4th Cir.1983). The trial court found that although both parties relied on statistics, they failed to adequately address the significance of the statistics. We agree with the trial court that the mere recitation of statistics, without some evidence tending to show that they indicate a meaningful phenomenon, does not show that the statistics are probative of claims that the RIF was pretextual.

Albertson claims several factual disputes are also indicative of pretext. We disagree. Albertson's allegations are conclusionary or unsupported by evidence in the record. Albertson did not present evidence demonstrative that FMC was profitable in 1985 and that there was no need for a RIF. Albertson contends that a pre-RIF letter which offered NOD employees incentives to take early retirement was an attempt to coerce older workers to quit. The letter, however, also offered incentives to younger workers who would agree to resign. None of Albertson's allegations of pretext creates sufficient material fact issues to preclude summary judgment for FMC.

Finally, Albertson claims that she should have been allowed to proceed to trial because she established a prima facie case of age discrimination. Albertson relies on *Bruss v. Toro Co.*, 427 N.W.2d 17 (Minn.Ct. App.1988). We disagree. We stated in *Bruss* that the circumstances created a genuine question of fact as to whether elimination of the employee's position was merely a pretext for replacing him with a younger man. *Id.* at 20. Because a genuine issue of material fact existed as to pretext, summary judgment was inappropriate. In the present case, Albertson has not demonstrated that a genuine fact issue exists as to pretext. Consequently, the trial court properly granted summary judgment in favor of FMC.

## DECISION

The trial court properly granted summary judgment, because appellant failed to produce any evidence to show that respondent's legitimate reasons for terminating her were mere pretexts for intentional age discrimination.

AFFIRMED.